# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

_____
)
KENNETH FAULK,                   )
                                 )
            Petitioner,          )
        v.                       )     CIVIL ACTION
                                 )     NO. 16-11893-WGY
SEAN MEDEIROS,                   )
                                 )
            Respondent.          )
_____)

YOUNG, D.J.                                      July 27, 2018

## MEMORANDUM AND ORDER

## I.    INTRODUCTION

Petitioner Kenneth Faulk ("Faulk") is a state prisoner who was convicted of murder in the second degree and carrying a firearm without a license in the Massachusetts Superior Court sitting in and for the County of Plymouth on November 18, 2010. On September 26, 2016, Faulk filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging these convictions.  Respondent Sean Medeiros ("Medeiros") opposes the petition.

For the reasons discussed below, this Court DENIES Faulk's habeas corpus petition.

## II.  BACKGROUND

Faulk was indicted for murder in the first degree and for carrying a firearm without a license.  Pet'r's Mem. Supp. Pet. Habeas Corpus Relief ("Pet'r's Mem.") 2, ECF No. 30.  On November 18, 2010, after a jury trial in the Massachusetts Superior Court, the jury found the petitioner guilty of the lesser included offense of murder in the second degree and guilty of the firearms charge.  Id.

The Massachusetts Appeals Court summarized the evidence introduced at Faulk's trial as follows:

> As shown by videotape surveillance footage obtained from a camera system installed at the scene, on April 30, 2007, [Faulk] entered 33 Dover Street, Brockton, with the victim, Derrick Wilson, right behind him.  [Faulk] stopped, turned, and appeared to speak to the victim.  The victim then followed the defendant up a set of stairs.  Two minutes later, the victim slid feet first down the stairs, and lay at the foot of the stairs, struggling.  Within seconds, [Faulk] came down the stairs, stepped over the victim, and left the building.  A few minutes later, [Faulk] returned with a female companion, and kicked the victim's foot and his head.
>
> According to the medical examiner, the victim died from a gunshot wound to the chest.  It appears from the video footage that no one entered or left through the second-floor door at the time of the incident.  There was evidence that the third floor of the building was locked.  When [Faulk] initially spoke with police, he told them that he had not entered the building with the victim.  After being shown still images from the video, he acknowledged his presence but claimed not to know if he had heard gunshots, or if there had been any kind of fight or struggle on the stairs.  He said that he kicked the victim to wake him up.
>
> A cigarette butt at the second-floor landing was linked to [Faulk] by deoxyribonucleic acid (DNA) evidence, and a

projectile found in the wall at the top of the second-floor landing was linked to the victim by DNA evidence. However, no weapon or shell casings were recovered. Strands of "Mardis Gras" beads worn by the victim were broken, and beads were found scattered -- including one at the top of the landing -- suggesting a struggle.

Commonwealth v. Faulk, No. 11-P-1663, 2016 WL 767584, at *1 (Mass. App. Ct. Feb. 29, 2016).

The trial judge sentenced Faulk to life on the murder charge and four to five years on the firearm charge to run concurrent with the sentence imposed on the murder charge. Pet'r's Mem. 2. The petitioner timely appealed on November 23, 2010.[1] Id. Faulk filed a motion for a new trial, which was denied without a hearing on June 6, 2014. Id. On June 13, 2014, Faulk timely appealed the order denying his motion for a new trial and the Appeals Court affirmed the judgment of his convictions and the denial of his motion for a new trial. Id. In March 2016, Faulk filed an application for leave to obtain further appellate review ("ALOFAR") in the Massachusetts Supreme Judicial Court. Pet'r's Mem. 3. The Supreme Judicial Court denied Faulk's ALOFAR on March 31, 2016. Id.

On September 26, 2016, Faulk filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254; Pet. Writ Habeas Corpus ("Pet'r's Pet."), ECF No. 1. On May 1, 2017,

---

[1] The Massachusetts Appeals Court entered the case on September 23, 2011. Pet'r's Mem. 2.

Faulk moved for leave to amend the petition, seeking to add two more claims, and Medeiros opposed the motion. Pet'r's Mot. Am., ECF No. 27; Resp't's Opp'n Mot. Am., ECF No. 28. On May 15, 2017, this Court denied Faulk's motion to amend, explaining that allowing the motion would render the petition a mixed petition subject to dismissal. Electronic Order, ECF No. 29. On May 22, 2017, Faulk filed a memorandum of law in support of his petition, Pet'r's Mem., which Medeiros opposed, Resp't's Mem. Opp'n Pet. Habeas Corpus ("Resp't's Opp'n"), ECF No. 35.

## II. STANDARD OF REVIEW

The standard of review of habeas corpus petitions is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Harrington v. Richter, 562 U.S. 86, 97 (2011). Under this standard, a federal court may not grant a writ of habeas corpus unless the underlying state court adjudication resulted in a decision that either "(1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Brown v. Ruane, 630 F.3d 62, 66–67 (1st Cir. 2011) (quoting 28 U.S.C. § 2254(d)(1)–(2)).

A state court['s] decision is "contrary to"
clearly established federal law . . . if it
"contradicts the governing law set forth in the
Supreme Court's cases or confronts a set of facts that
are materially indistinguishable from a decision of
the Supreme Court and nevertheless arrives at a result
different from its precedent."

Id. at 67 (quoting John v. Russo, 561 F.3d 88, 96 (1st Cir.

2009)).  A state court's decision involves an unreasonable

application of clearly established federal law "if the state

court 'identifies the correct governing legal principle from

[the Supreme] Court's decisions but unreasonably applies that

principle to the facts of the prisoner's case.'"  Id. (quoting

Williams v. Taylor, 529 U.S. 362, 413 (2000)) (alteration in

original).

Under 28 U.S.C. § 2254(e)(1), "'a determination of a

factual issue made by a State court shall be presumed to be

correct.'  The petitioner bears the burden of overcoming that

presumption by providing 'clear and convincing evidence.'"  Teti

v. Bender, 507 F.3d 50, 57 (1st Cir. 2007) (quoting 28 U.S.C. §

2254(e)(1)).  "The 'presumption of correctness is equally

applicable when a state appellate court, as opposed to a state

trial court, makes the finding of fact.'"  Id. at 58 (quoting

Norton v. Spencer, 351 F.3d 1, 6 (1st Cir. 2003)).

The Supreme Court in Chapman v. California, 386 U.S. 18

(1967), articulated the constitutional harmless error standard,

which provides that, on direct appellate review, an error at

trial affecting the defendant's constitutional rights will be deemed harmless only if it can be shown to be harmless beyond a reasonable doubt. Id. at 24. In Brecht v. Abrahamson, 507 U.S. 619 (1993), the Court held that a federal court on collateral review of a state appellate court's application of Chapman should not apply the same harmless error standard but instead use an "actual prejudice" standard. Id. at 637. Specifically, as the Court explained in Brecht, a habeas petitioner in such a case must show that the error "had substantial and injurious effect or influence in determining the jury's verdict." Id. (quoting Kotteakos v. Unites States, 328 U.S. 750, 776 (1946)).

In Mitchell v. Esparza, 540 U.S. 12 (2003), the Supreme Court explained that "when a state court determines that a constitutional violation is harmless [under Chapman], a federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was unreasonable." Fry v. Pliler, 551 U.S. 112, 119 (2007) (describing Mitchell).

In Fry v. Pliler, the Court held that the Brecht standard "obviously subsumes" the Chapman standard, and federal courts need not formally apply both tests; the Brecht test alone is sufficient. Id. at 120. As the First Circuit has noted, "[t]here is clear logic to that position: if an error had a 'substantial and injurious' effect on a jury's verdict (Brecht standard), then it is necessarily unreasonable to conclude that

the error was harmless beyond a reasonable doubt (<u>Esparza</u>
standard)." <u>Connolly</u> v. <u>Roden</u>, 752 F.3d 505, 511 (1st Cir.
2014).

Applying these principles to the instant case compels the
conclusion that Faulk's petition must be DENIED.

**III. ANALYSIS**

Faulk's petition raises the following four grounds: (i) a
substantial risk of miscarriage of justice was created by the
prosecutor's closing argument; (ii) the trial judge committed
palpable error by limiting evidence of the decedent's state of
mind; (iii) the motion judge erroneously denied Faulk's motion
to suppress; and (iv) the error that occurred at trial were not
harmless. Pet'r's Pet. 2. Faulk also attempts to add two more
grounds in his memorandum of law in support of his habeas
petition: (v) the trial judge failed to give a proper <u>Bowden</u>
instruction, and (vi) actual innocence. Pet'r's Mem. 31-35.
Medeiros opposes Faulk's petition, arguing that (i) Faulk's
petition is barred based on an adequate and independent state
law ground, (ii) the Massachusetts state courts reasonably
rejected Faulk's claims of constitutional error, (iii) Faulk
improperly expanded the scope of his habeas petition through his
memorandum supporting his petition, and (iv) Faulk's claim that
the errors that occurred at trial were not harmless is not
exhausted. Resp't's Opp'n 9-26.

## A.    Ground I

Faulk argues that the prosecutor's closing argument "personally attacked the defendant, defense counsel, and the theory of the defendant's defense, while unnecessarily invoking sympathy and passion in the jury." Pet'r's Mem. 7. He claims that these arguments created a substantial risk of a miscarriage of justice and violated his right to due process under the Fourteenth Amendment. Id. He also argues that the defense counsel's failure to object to the closing argument violated his Sixth Amendment rights. Id. Medeiros argues that this claim is barred because the state court rejected it based on an adequate and independent state law ground. Resp't's Opp'n 9-10.

The Supreme Court has applied the independent and adequate state ground doctrine "in deciding whether federal district courts should address the claims of state prisoners in habeas corpus actions." Coleman v. Thompson, 501 U.S. 722, 729 (1991). "The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Id. at 729-30. Such judgments "rest[] on independent and adequate state procedural grounds." Id. at 730. To overcome the bar to federal review in such cases, a petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate

that failure to consider the claims will result in a fundamental miscarriage of justice." Id. at 750.

Here, the Appeals Court noted that Faulk did not object to the prosecutor's closing argument, and in accordance with established Massachusetts law, it limited itself to determining whether there was a substantial risk of miscarriage of justice. Faulk, 2016 WL 767584 at *2; see Commonwealth v. Harrington, 379 Mass. 446, 449 (1980) ("The trial judge's discretionary power to give relief from [a waived objection] . . . should be exercised only in those extraordinary cases where, upon sober reflection, it appears that a miscarriage of justice might otherwise result."). In concluding that there was no substantial risk of miscarriage of justice, the Appeals Court explained that the judge had instructed the jury that closing arguments were not evidence and that the jury must not be swayed by prejudice or sympathy, and it cited the strength of the evidence against Faulk as well as the jury's rejection of the first-degree murder charge. Faulk, 2016 WL 767584 at *2; see Commonwealth v. McLaughlin, 431 Mass. 506, 511-12 (2000); Commonwealth v. Boyajian, 68 Mass. App. Ct. 866, 870 (2007).

Because the Appeals Court based its decision on Faulk's failure to object at trial, Faulk's claim is barred unless he can demonstrate cause and actual prejudice, or that failure to consider the claim will result in a fundamental miscarriage of

justice.  See Burks v. Dubois, 55 F.3d 712, 716 & n.2 (1st Cir. 1995).  He demonstrates neither.

"To excuse a procedural default, a petitioner's cause must relate to an objective factor, external to the defense, that thwarted (or at least substantially obstructed) the efforts of the defendant or his counsel to obey the state's procedural rule."  Burks, 55 F.3d at 716-17.  Faulk does not allege the existence of any such factor.  To the extent he is relying on attorney error, the First Circuit has noted that mere attorney error is insufficient to constitute cause, if the error does not amount to ineffective assistance "in a constitutionally significant sense."  Id. at 717.  Faulk has not claimed ineffective assistance of counsel and has not otherwise shown cause rising to that level.

Because Faulk has not shown cause, the Court need not consider whether he has shown actual prejudice; rather, it moves on to the miscarriage of justice inquiry.  See e.g., id. at 717-18.  The Supreme Court has explained that "for the most part, 'victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard.'"  Murray v. Carrier, 477 U.S. 478, 495-96 (1986) (quoting Engle v. Isaac, 456 U.S. 107, 135 (1982)).  It is only the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent," that merits the grant of

habeas relief absent a showing of cause.  Id. at 496.  Faulk has not met this high bar to relief.  Though he argues that the prosecutor's comments unfairly took advantage of the fact that evidence of the victim's mental health had been excluded, Pet'r's Mem. 10, given the strength of the evidence against him, this Court is unpersuaded that a reasonable juror would not have convicted him but for the prosecutor's comments.  See Burks, 55 F.3d at 718 ("[P]etitioner's recreation of what transpired in the state trial court shows, at most, that there was a legitimate jury question as to his guilt, and that the prosecutor placed her thumb on the scales of justice at one point.  This is not enough to qualify for extraordinary relief. . . .").

Because Faulk failed to show either cause or a fundamental miscarriage of justice and, accordingly, cannot overcome the procedural default rule, Faulk's claim that the prosecutor's closing argument violates his constitutional rights is barred.

**B.   Ground II**

Faulk argues that the trial judge "committed palpable error" and violated his rights under the Fifth, Sixth, and Fourteenth Amendments by excluding evidence of the victim's state of mind.  Pet'r's Mem. 14-29.

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner may obtain habeas relief on a claim

adjudicated on the merits in state court only if "the decision was contrary to clearly established federal law as determined by the Supreme Court of the United States, or involved an unreasonable application of such definitive federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Cooper v. Bergeron, 778 F.3d 294, 299 (1st Cir. 2015) (citing 28 U.S.C. § 2254(d)). A decision is "contrary" to clearly established law if the state court "'applies a rule that contradicts the governing law set forth' by the Supreme Court or 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" Gomes v. Brady, 564 F.3d 532, 537 (1st Cir. 2009) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)) (alteration in original). A state court unreasonably applies federal law when it "correctly identifies the governing legal principles, but (i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply." Id. (quoting Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007)). Federal courts are to "presume that the state court's findings

of fact are correct," Sleeper, 510 F.3d at 38; a petitioner "may defeat the presumption of correctness only with clear and convincing evidence to the contrary." Id. (citing 28 U.S.C. § 2254(e)(1)).

At his trial, Faulk sought to introduce various medical records showing that the victim suffered from mental illness, as well as expert testimony on the records. Faulk, 2016 WL 767584 at *1. Faulk also sought to elicit testimony from a police officer who had been told that the victim had an argument with his ex-girlfriend shortly before his death. Id. at *2. The trial judge allowed a "limited number" of the medical records and the expert's testimony, but excluded the police officer's testimony on the basis of hearsay. Id. at *1-2. Faulk now argues that he should have been permitted to introduce more of the medical records, his expert should have been granted more time to review the records before testifying, and the hearsay testimony was wrongfully excluded. Pet'r's Mem. 14-29. He raised these claims to the Appeals Court in his appeal from his convictions and motion for a new trial, and the Appeals Court rejected both claims. Id. In doing so, it adjudicated the claims on their merits and thus its holding is due AEDPA deference. See e.g., Harrington v. Richter, 562 U.S. 86, 98-99 (2011); Buckman v. Roden, No. 13-CV-11413-IT, 2015 WL 1206348, at *3 (D. Mass. Mar. 17, 2015) (Talwani, J.).

While "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense,'" <u>Crane</u> v. <u>Kentucky</u>, 476 U.S. 683, 690 (1986) (quoting <u>California</u> v. <u>Trombetta</u>, 467 U.S. 479, 485 (1984)), that right "is subject to reasonable restrictions," <u>United States</u> v. <u>Scheffer</u>, 523 U.S. 303, 308 (1998).  Reasonable restrictions include "the state's 'legitimate interest in ensuring that reliable evidence is presented.'"  <u>DiBenedetto</u> v. <u>Hall</u>, 272 F.3d 1, 8 (1st Cir. 2001) (quoting <u>Scheffer</u>, 523 U.S. at 309).  "[E]videntiary exclusions will not violate the constitution 'so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve."'"  <u>Id.</u> (quoting <u>Scheffer</u>, 523 U.S. at 308 (quoting <u>Rock</u> v. <u>Arkansas</u>, 483 U.S. 44, 56 (1987))).  The Supreme Court has explained that evidentiary exclusions are arbitrary or disproportionate "only where it has infringed upon a weighty interest of the accused." <u>Scheffer</u>, 523 U.S. at 308.

Trial judges have "broad discretion" in making evidentiary rulings.  <u>Leftwich</u> v. <u>Maloney</u>, No. 01-10284-GAO, 2006 WL 2883346 at *4 (D. Mass. Oct. 5, 2006) (O'Toole, J.).  State court trial judges therefore have a "'wide latitude' to exclude evidence that is 'repetitive . . . , only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'"  <u>Crane</u>, 476 U.S. at 689-90 (quoting <u>Delaware</u> v. <u>Van Arsdall</u>, 475 U.S. 673, 679 (1986)) (alteration in original); <u>see</u>

Holmes v. South Carolina, 547 U.S. 319, 326 (2006) ("While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.").

Faulk has failed to show that the Appeals Court's decision was contrary to or an unreasonable application of federal law, or was based on an unreasonable determination of facts. In rejecting Faulk's claim that he ought have been able to introduce more medical records, the Appeals Court recognized the speculative nature of the evidence given "the improbability of suicide given the circumstances of the victim's death" and explained that the trial judge's decision to "[l]imit[] that evidence to records close in time to the date of death was well within [his] discretion." Faulk, 2016 WL 767584 at *2. It further explained that Faulk was not prejudiced by the trial judge's decision not to give the expert more time to prepare her opinion:

> Even after Dr. Shapiro had the opportunity to review the victim's complete records thoroughly in preparing an affidavit supporting the defendant's new trial motion, she could go no farther than to state that "it is not unreasonable to hypothesize that the

decent may have had a wish to harm or kill himself
around the time of the alleged incident."
Id. As the Appeals Court reasonably noted, this assessment

"amounts to no more than conjecture." Id.

The Appeals Court also reasonably rejected Faulk's argument
that the trial judge erred by excluding the police officer's
hearsay testimony. The Appeals Court reasoned that none of
Faulk's three potential justifications for admission --
relevance to state of mind, the excited utterance exception, and
the residual exception recognized in the Federal Rules of
Evidence -- warranted admission of the testimony, explaining
that relevance to state of mind "does not cure the hearsay
problem," the foundational requirements for the excited
utterance exception had not been established, and the
Massachusetts Rules of Evidence does not recognize the residual
exception. Id. Consequently, it concluded, the trial judge
"did not abuse his discretion in excluding the testimony." Id.
Though Faulk attempts to relitigate these evidentiary rulings,
his argument is hindered by the broad discretion that trial
courts have to exclude unreliable, misleading, or unduly
prejudicial evidence. He fails to convince this Court that the
exclusion of this evidence meets the high standard of
"arbitrar[iness]" or "disproportiona[lity] to the purposes [the
evidentiary rules] are designed to serve." Sargent v.
Bissonnette, No. CIV.A. 03-11124-RGS, 2011 WL 487779, at *10 (D.

Mass. Jan. 10, 2011) (Bowler, M.J.), <u>report and recommendation</u> <u>adopted</u>, No. CIV.A. 03-11124-RGS, 2011 WL 486145 (D. Mass. Feb. 7, 2011) (Stearns, J.) ("As recognized by the First Circuit . . . Supreme Court cases undoing state court convictions as contravening the defendant's right to present reliable, exculpatory evidence 'involve egregious situations "and the more recent decisions of the Court . . . create serious doubts that the Court is interested in carrying the doctrine beyond egregious cases."'" (quoting <u>DiBenedetto</u>, 272 F.3d at 8)).

### C. Ground III

Faulk next argues that the motion judge erroneously denied his motion to suppress the statements that he made after he allegedly invoked his right to counsel, violating the rights afforded him by both the Fifth Amendment of the United States Constitution and Article Twelve of the Massachusetts Declaration of Rights. Pet'r's Mem. 29. He claims that after being given his <u>Miranda</u> warnings when being interrogated by the police, he responded, "What does this mean? Like am I getting arrested? Like, can my lawyer speak or -- " and was interrupted by a police officer, who told him he was not under arrest. <u>Id.</u> Faulk argues that this constitutes an "unequivocal invocation of the right to counsel," or alternatively, he suggests that the police officer should have "at the very least . . . clarified any ambiguity." <u>Id.</u> Medeiros argues that Faulk's asking the

17

police whether his lawyer could speak "is not an unambiguous indication that he in fact wanted a lawyer or wanted to remain silent in the absence of a lawyer." Resp't's Mem. 22.

In Davis v. United States, 512 U.S. 452 (1994), the Supreme Court held that a suspect must invoke his right to counsel established by Miranda v. Arizona, 384 U.S. 436 (1966), "unambiguously." Id. at 459. "If an accused makes a statement concerning the right to counsel 'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation or ask questions to clarify whether the accused wants to invoke his or her Miranda rights." Berghuis v. Thompkins, 560 U.S. 370, 381 (2010) (quoting Davis, 512 U.S. at 459.). If he unambiguously requests counsel, "the interrogation must cease until an attorney is present." Edwards v. Arizona, 451 U.S. 477, 481 (1981) (quoting Miranda, 384 U.S. at 474). "Invocation of the Miranda right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" Davis, 512 U.S. at 459 (quoting McNeil v. Wisconsin, 501 U.S. 171, 178 (1991)). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel," however, the cessation of questioning is not required. Id.

The Appeals Court determined that "[t]he motion judge was entitled to conclude on the evidence before him (including the videotape of the interview) that the defendant did not make an unequivocal request for an attorney." Faulk, 2016 WL 767584, at *3. Whatever this Court might conclude were it to have considered the matter ab initio, Faulk has not pointed to any **precedent** that establishes his question rises to the level required in Edwards, and thus he has failed to show that this holding is contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts. See Obershaw v. Lanman, 453 F.3d 56, 64-65 (1st Cir. 2006) (state court's conclusion that petitioner's question, "Can I talk to a lawyer first?" was insufficient to invoke his Miranda right to counsel was not contrary to or unreasonable application of federal law).

### D. Ground IV

Faulk's fourth claim is that the errors that occurred at trial -- specifically, the exclusions of the state of mind evidence -- were not harmless. Pet'r's Mem. 30.[2] He argues that far from being overwhelming, the evidence against him "rested exclusively on conjecture and surmise," and consequently the

---

[2] Pet'r's Mem. Erroneously repeats page 30.  In this instance, Faulk cites to the second of the two.

errors committed at trial "made a real difference in the outcome."  Id.

Harmlessness, however, is relevant only where a court has concluded that a constitutional error has in fact occurred.  See e.g., United States v. Pridgen, 518 F.3d 87, 91 (1st Cir. 2008) ("We therefore conclude that the district court erred . . . . We now must determine if the error was harmless.").  This Court has ruled that the Appeals Court was reasonable to uphold the exclusion of the evidence concerning the victim's mental health and the victim's argument with his ex-girlfriend, see supra, and thus no constitutional error occurred.  This claim, which presumes the existence of a constitutional error, accordingly must fail.[3]

---

[3] Medeiros argues that this claim has not been exhausted because Faulk did not present it in his ALOFAR to the Massachusetts Supreme Judicial Court.  Resp't's Mem. 25. Indeed, a habeas petitioner "must have 'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim" to satisfy the exhaustion requirement.  Anderson v. Harless, 459 U.S. 4, 6 (1982) (quoting Picard v. Connor, 404 U.S. 270, 275, 277-78 (1971)).  While it appears that Faulk did not raise harmlessness as a standalone claim in his ALOFAR, see Appl. Further Appellate Review, Resp't's Supp. Ans., Ex. G, ECF No. 18, his harmlessness claim stems from the same alleged violations of the Fifth, Sixth, and Fourteenth Amendments that he asserts in his second claim, which was presented in the ALOFAR.  Given that the harmlessness inquiry is part and parcel of the analysis of whether a petitioner is to receive relief for such a constitutional violation, this Court concludes that the harmlessness issue was "fairly presented."

**E.    Grounds V and VI**

In his memorandum to the Court, Faulk adds two grounds to his argument:  he argues that the trial judge's failure to give a proper _Bowden_ instruction violated his right to due process of law, and he asserts actual innocence.  Pet'r's Mem. 31-35. Medeiros argues that this Court ought disregard these claims because they were not presented in his original petition for habeas relief.  Resp't's Mem. 22.  This Court agrees.  These two claims are identical to those Faulk tried to add to his petition through his motion to amend, _see_ Pet'r's Mot. Leave Am. 4-7, which this Court denied.  As it then explained, because these claims had not been exhausted,[4] allowing the addition of the claims would render Faulk's petition a mixed petition subject to dismissal.  Order, ECF No. 29; _see_ _Rose_ v. _Lundy_, 455 U.S. 509, 522 (1982).  Because "[i]t is the petition for a writ of habeas corpus, not subsequently filed memorandum, which defines the claims for habeas relief," _Smiley_ v. _Maloney_, No. CIV.A. 01-11648-GAO, 2003 WL 23327540, at *16 n.39 (D. Mass. Oct. 31, 2003) (O'Toole, J.), and any claims not in the petition are

_____

[4] Faulk did not present either of these two claims in his ALOFAR to the Massachusetts Supreme Judicial Court.  _See_ Appl. Further Appellate Review, Resp't's Supp. Ans., Ex. G. Consequently, they are unexhausted and he is barred from raising them in a federal habeas proceeding.  _See_ _Baldwin_ v. _Reese_, 541 U.S. 27, 32 (2004); _Josselyn_ v. _Dennehy_, 475 F.3d 1, 3-4 (1st Cir. 2007); _Mele_ v. _Fitchburg Dist. Court_, 850 F.2d 817, 820-23 (1st Cir. 1988).

waived, see Logan v. Gelb, 790 F.3d 65, 70 (1st Cir. 2015), this

Court will not consider these two additional claims here. See

also Fencher v. Roden, No. CIV.A. 13-11937-RGS, 2015 WL 4111329,

at *8 (D. Mass. July 8, 2015) (Stearns, J.) (holding that

petitioner's new grounds for relief presented for the first time

in his memorandum were barred because they were not included in

his habeas petition).

## IV.   CONCLUSION

For the foregoing reasons, Faulk's petition for writ of

habeas corpus, ECF No. 1, is DENIED.

**SO ORDERED.**

_/s/ William G. Young_
WILLIAM G. YOUNG
DISTRICT JUDGE